May it please the court, my name is Vishwanathan Rudrakumaran and I represent Sadish Kumar Annachamy, the petitioner in this case. Your Honour, this case involves two issues, whether D.R.'s exception should be read into the material support statute and also whether political offence exception should be read into the statute. At the outset I would like to state two things. One is when my client provided support, the LTT was not designated, it was a tier 3 organisation. The second thing I would like to... Wait, back up. You are saying when he provided support, it was or was not a terrorist organisation? It was not designated as a terrorist organisation. It is a tier 3 organisation, Your Honour. So now you are like your predecessors are all challenging the status? No, no, no. I am not challenging the status. It just wasn't listed. Or designated, rather. No, I am not challenging the status, Your Honour, but I am arguing, I will argue... Yes. ...because of the political offence exception, then my client's actions will not, should not fall within the purview of the material support statute. Okay, I am going to try and make sure I understand. You are arguing that it was a terrorist organisation, but it shouldn't apply in this case because there is a political activity exception that you are now trying to argue. And this is something that you have raised in your reply brief, isn't it? No, Your Honour. I argue this issue at the BIA level, also then I argue in my opening brief. I am not conceding that because unlike Khan's case, Your Honour, there is nothing in the record that shows when my client provided support that LTT was engaged in terrorist activities. In fact, my client testified, according to him, that they were fighting the military to liberate the Tamil people. So the board said, okay, that's fine, but still that is a terrorist activity. So that's our challenge. I'll come back on my second argument. All right. And regarding the humanitarian, the government cited the humanitarian, the hoarder versus humanitarian law project, Your Honour, that case has no relevance whatsoever to this case. In humanitarian law project case, the plaintiffs had a free will. They could choose whether they want to support or they don't want to support. And in that case, they chose to support the non-violent activities, but the court said, no, even if you support, you are still liable. But in this case, in my case, Your Honour, the petitioner did not have a free will to even make a decision. And it is interesting to note that the BIA itself never cited the humanitarian law project as a hoarder case in its decision. Even though the Supreme Court case decision came later, the Ninth Circuit has already ruled on that issue, even when this case was decided. Not only in this case, I represent a lot of people in a similar situation. Last month also I got a BIA opinion. Not a single case the BIA has ever cited humanitarian law project case in support of its position. So that is not relevant whatsoever. So you're arguing, I know you argue the duress issue. Yeah, the duress issue, yeah. It's a multiphase argument. One we argue in my brief, the plain meaning, support. Support means commentable. Approval. That's a common sense kind of an argument. But what the BIA said, hey, when it comes to the Communist Party membership, the Congress specifically used the word involuntariness. Whereas in this case, the terrorism bar, they did not use that word. That was the primary argument BIA advanced in my case, and it's been advancing in subsequent cases. But our argument, you know, actually, as many cases I have cited in my brief, and recently in the Sinkhar case, also the Third Circuit said, well, that is a valid canon. They say Congress enacted in one clause certain words, they did not include certain words. But when the proximity, when it's been done by two different Congress, that cannot be a valid canon. So here the Communist Party thing happened 40 years ago. It has nothing to do, actually came on an Internal Security Act, not in part of the Refugee Act. And then I said in my brief, Your Honor, the reason why they included, because the Communist Party, the Communism was so oppressive in the whole society. If you want to get food, if you want to get employment, you must have the Communist Party membership. So you're saying basically that because the statute, just because the statute within its own parameters does have an explicit exception for involuntariness, we shouldn't construe that against you because there were special circumstances attaching to communism and the like. Yes, Your Honor. And therefore, it's, we're still free under the statute to say, read an implicit duress exception into what the knowing or the knowledge exception. In fact, the Displacement Act, the Supreme Court, the recent decision in Nicosia, in that case, Your Honor, the Supreme Court said in Section 2A of that particular Act, Congress used the word that, you know, if you participate in the persecuting of people, then you are barred. But in the second, the next, immediate next clause, 2B, it says, but if you voluntarily participate in the attack against United Nations, so they used the word in the same statute within Section 2A says something, 2B did not incorporate that word. But in the terrorism bar, there is no such, in any of the provisions, they never used the word voluntariness. Okay. Now, can I just, because we've talked about duress, one thing, and I understand the concern about someone who's forced into it under threat, the government argues that the answer, and the Kahn case discusses this, is that the answer to the concern about people who have been forced into providing support have the relief under the waiver provision of what we were talking about in the prior case, but that that decision has been assigned to the Secretary of Homeland Security and the Department of State, and that that would be a decision that the government can make to take care of cases on a case-by-case basis, not in the courts, because it's not going to be reviewable. What's your answer to that? My answer, Your Honor, I would like to quote the paragraph from the conquering judge in the Kahn case. Judge Nelson, he devoted one paragraph about this mechanism. Yes. And he said it's very haphazard. She. She, I'm sorry. It's Dorothy Nelson. She said it's haphazard. Okay. And most importantly, she said that for countries like India in Kahn case, so a democratic country, that that provision is not applicable. So similarly, if we are going to take this mechanism as an alternative means, as an effective means where he can address this duress exception, Sri Lanka is considered as a democratic country, so my client will not get the benefit from this provision. In fact, this case, initially we filed the petition in 2007, and we've been talking to the government for three years to send this case for this mechanism. The government has not been able to do it. Unlike the previous case, had they sent it to the waiver mechanism, they denied it. That's fine. That's a different thing. Here, the government is unable to send this case for three years for the waiver mechanism because it is not effective. So this provision, this provision doesn't save my client. If the court thinks my client has another forum where he can go and argue this duress exception, there is no forum. There is no effective forum. So there are a lot of issues raised about the applicability of the UN Convention and all kinds of arguments, and the Kahn's case here, you've got this mechanism. But I would rely on the conquering opinion, and specifically in the Sri Lankan case, this mechanism is not an effective alternative means where he can address the duress exception. And there are certain courts that have already addressed this issue, Your Honor, in the Eighth Circuit. In fact, the Perinbanadan case I cited in my brief is a Sri Lankan case, a similar situation. The guy came at the airport. He said, I consider LTT as a liberation movement trying to liberate people, blah, blah. The court said, I just read one line. The court said, we agree with the BIA that the substantial evidence shows that petitioner voluntarily, the court used the word voluntarily participated in LTT activities, and because it is a terrorist organization, he is barred from claiming asylum and relief. So the court has, the courts have interpreted in a manner to incorporate the voluntariness into the statute. So that's pertaining to the voluntariness, the duress argument, Your Honor. And I have cited in my reply brief some other cases. And then let me move to the political offense exception, Your Honor. This is also, this from Khan's case. In Khan's case, the court, the concurring opinion said, okay, I sustained the, I find he is, he engaged in terrorist activities because the record shows there are evidence that the organization was engaged in terrorist activities during that time. But in this case, there is no such record. Moreover, the BIA did not say like that. The terrorist activity, that's enough. That was the rationale given by the BIA itself. So it's distinguishable. And also the majority opinion said that the Khan did not raise the argument, this international law argument, into the, at the beginning, so therefore that's not the case. So that's what the majority tried to address that issue. Here, when we argue the political offense exception, that incorporates everything. The additional political offense exception incorporates international law, it incorporates democracy, alternative means. So that's what our argument regarding the political offense. And also one more thing, Your Honor, the crime of violence, when it comes to aggravated felony, there is an exception. If you do it for political offense, then you are exempted. So then you have a situation where you said that you cannot be considered as aggravated felony, you cannot be deported because it's a political offense. And the same, the statutory framework, no, you are kicked out because political offense has nothing to do with terrorism. So there's contradiction. So the statute should be read in a harmonious way to have a legal, to have a meaningful application. You suggested that there was a possibility that in Sri Lanka the domestic laws would, if we went down the political exception, that the domestic laws would allow what was happened, what was going on here. Do you have any evidence? No, no. I did not say like that. I said that that inquiry should have been made. I did not argue that the Sri Lankan domestic laws allows that one. I said had the BIA recognized this concept, then the Court would have engaged in that kind of an analysis, whether Sri Lankan laws allows or whether there's an alternative means, proportionality. There are various factors come into play in that concept. But the BIA simply say no. Okay. All right. Why don't you save the rest of your time for rebuttal. Thank you, Your Honor. May it please the Court, with regard to the ---- You want to ---- you have introduced yourself before, but this is a separate case, so I have to start again. Yes. It's Ethan Cantor for the U.S. Attorney General in this matter, Your Honor. To address at first my opposing counsel's reference to the difference between the designated terrorist organization and the so-called Tier 3 organization. He merely noted that at the time, on this record, the LTTE was not a designated, meaning a Tier 1 organization. However, he concedes that it was a Tier 1 organization and not a Tier 3, that is, undesignated terrorist organization. Regarding the political offense argument, which he contends was raised to the BIA, I think it's very easy to compare the brief submitted before this Court and the brief submitted before the BIA, because they are identical in many respects, minus the political offense argument. Yes. I think, maybe being generous, but the way I understood, they were saying that if ---- because this was argued before Kahn came down, isn't that right, in the BIA? That's correct. Okay. So now Kahn comes down, and I think what they're trying to say is, well, there's got to be some exception so that if you have new or have reason to know that it's a terrorist organization, then if you have a belief that you're only dealing with a political activity, not a terrorist organization, then you don't really have reason to know. So whether or not, you know, I agree it's a little hard to tease out the language, but in any event, why don't you feel free to address it. I take your point about it wasn't raised or exhausted, but it would be helpful to get your perspective on the argument, because it was raised in a reply brief, and I'd like you to have the chance to speak to it. Okay. Assuming, putting aside the question of failure to exhaust an administrative remedy, as Your Honor characterized it, there are two aspects. The statute does provide a knowledge exception. It provides an opportunity to demonstrate that there is clear and convincing evidence that the individual either did not know or should not reasonably have known it was a terrorist organization. That issue, and I think there's no debate here, was abandoned in this case. It was made early on and then abandoned. As to the political offense argument, again, assuming or putting aside the exhaustion with respect to that, the argument as it's addressed in Kahn is that there is no exception in the state. Kahn was clear about that. There is no exception for what would be considered armed resistance, legitimate armed resistance against an oppressive regime, even if that were sanctioned in all respects under international law, there's no exception in the statute for that. That's clear in Kahn. That's clear in the Board's decision of matter of SK. What the Court allowed in Kahn was the majority acknowledged the theory that if, for example, with the Geneva Convention, there was evidence to show that the law of the state incorporated that international law into its own law, then, you know, there might be an avenue to show, in fact, that the activity was not unlawful, which it must be in order to meet the definition of terrorist activity. However, what my opposing counsel did not point out when he argued this in his reply brief is that even the Kahn concurring opinion which addressed that argument noted that the JKLF, the group in that decision, would not have met any notion of legitimate armed resistance under the Geneva Convention or any other because of detonating bombs in public places and so forth, all of which based on the same organization. It's not the same organization, but the LTTE and the record in this case will show, State Department reports and the like, that it engaged in similar activities that, according to the concurring opinion, even the concurring opinion in Kahn would be beyond the notion, even if that argument had been pursued and it didn't take the Kahn decision, you know, to provide a basis to raise that argument. The argument derives from a reading of the statutory language. It was made in Kahn, could have been made here, wasn't. Kennedy. So here's at least my concern. You have a situation where you have someone who is dragooned into under threat and I'm just going to state it as favorably to the, Mr. Anakamy, as I can because I'm trying to understand the government's position because in Kahn there's a hypothetical about basically finding that the Jewish resistance during the Holocaust in Germany could have been found to be not excusable and therefore they would be arguably terrorists. The Jews would have been considered to be terrorists by opposing the brutality of the Nazi regime and that's a very troublesome concept. So you take this case, and we have seen lots of cases over the years in this circuit where the terrorist organization forces people to help them based on threats of death or retribution. So why isn't there, why isn't it appropriate to find that there is some kind of duress exception? I understand the, which I earlier adverted to, there's this notion that the Secretary of State and the Secretary of DHS have been given some kind of authority. Judge Nelson, I'm not sure whether what you were just saying addresses that, but if in this case that avenue is not available by way of a safety valve, so to speak, what kind of structure are we putting, expected to put our imprimatur on as a matter of statutory interpretation? Okay. Addressing Your Honor's question with several subparts, to take... For being kind, this would be a compound question, but I think you know where I'm, you know the area well enough, I think, to parse it. To take the reference to the Kahn decision's reference to the Jewish resistance against the Nazis, first, the court acknowledged that that is troubling. Nonetheless, that would be a required reading under the statute. The Kahn decision did reference the breadth of the material support and counterterrorism provisions of the immigration statute, but noted that it was combined, to use the court's word, combined with the executive branch discretionary mechanism. In this case, that mechanism is available to address precisely the situation involving duress, coercion, other kinds of involuntary involvement. In this case? Counsel says it was. Counsel... Because it isn't applicable here. Well, firstly, the question of the process and the mechanism and how it's being pursued is not before this Court in this case. Counsel has not raised that. Counsel has targeted one question, which is a statutory construction issue, as to whether the material support bar includes a duress exception. Not whether... But that wasn't raised in Kahn, though. That wasn't an issue in Kahn. That's correct. It was not raised in Kahn. It is raised here. However, the how the discretionary mechanism is conducted is not part of... Counsel, okay. That's fine. But if, first of all, is Judge Nelson correct that there are limitations into that safety valve, as I'm calling it, that would preclude that kind of discretionary relief in some cases? And is this one of those cases? No, because there's a distinction between the counterterrorism provisions, the material support bar in particular, and the waiver. And Kahn, talking about the lack of exceptions, is talking about the interpretation of the provisions, not the discretionary waiver. Kahn was not saying the waiver's not available to benefit an individual who claims that he provided, you know, legitimate armed resistance. All right. So... But it's not in the statute, meaning when the case comes up through the immigration court, the immigration courts are a creature of the Attorney General. The waiver is in the sole and unreviewable discretion not of the Attorney General. I understand that. Okay. So they are two different processes. When we are interpreting the immigration statute, which is administered through the immigration court, which is how this case arrived at this court. We have to, counsel, let me sharpen the focus here. We have to decide and deal with an argument that there's an implicit duress construction that can be placed on this statute. There are all sorts of statutory principles and legislative history and everything else. I'm acknowledging that. The BIA and Kahn have invoked as kind of an ameliorating or mitigating principle that things that might drive the notion for an implicit duress interpretation of the statute is that, look, there is a mechanism to deal, and the Congress has spoken to that, and to deal with it. If it isn't available, if it's not true, there's a fundamental hole in the analysis. If it's not available to a person because of some circumstance, also beyond that person's control. It so happens he's been coerced by some organization that disqualifies him from even getting the executive branch consideration. And I don't know where we sit in this case, because we're being asked to interpret the statute, and we're supposed to, I don't know what we do with that executive branch discretion if it doesn't really exist. The executive branch discretion, which was adverted to in the Kahn decision, and in particular at page 786 of Kahn, it is noted, we recognize the statute includes a discretionary waiver, and the statute does not guide the execution of this discretion. This is the statutory scheme that Congress has provided. They have provided broad terrorism provisions with a counterbalance by a discretionary waiver. As to how that waiver is administered, this Court has held there is no guide to the execution of that discretion. I'm not asking how it's administered. I'm asking whether it applies on the facts of this case. If there's a categorical exclusion of because of the nature of the organization at issue in this case that says, however it's administered, it's not applicable by its own terms. No, Your Honor. We don't want to be the waiver, the terms of the waiver, and, indeed, how it has been implemented. Your Honor referred to the Chertoff publication in the prior argument. The Chertoff publication is available by its terms to entertain claims that terrorist activity and material support for terrorist activity was provided under duress. All right. And if we accept the government's argument in this case, the Petitioner in this case will be able to turn to that process. However it's administered, he's not somehow foreclosed. That process remains available. You're not answering my question. Is he or is he not categorically precluded from getting into the process? He is. You can't answer it because it's not clear or it's — I'm not asking how he's going to be handled. I just want to know whether that process is available to all. I think there's an exclusion in the statute itself. Right. That process is available to all, described by the implementing publication in the Federal Register, cited in the briefs, and by its terms embraces claims involving duress such as that presented by this Petitioner. If I may ask more specifically, because this Petitioner has receded so far in the system, in the process, would he be precluded from now seeking to — seeking relief in that venue at this point in the process? At this point in the process, he's not precluded. The terms of the implementing provisions still embrace cases involving duress. Okay. All right, counsel, thank you. Thank you, Your Honor. Thank you. It is pointed out the BIA, in its decision, did not cite this clause to save their determination, even though this clause, this mechanism, which the BIA cited in the precedent decision in 2006 in matter of escape, BIA did not cite this provision in support of the argument. They simply said the statute is silent. They did not say all these — my concerns can be addressed through this mechanism. They did not say it. But counsel has now represented that your client's not foreclosed from seeking relief under this mechanism. So why wouldn't that be something that you would seek for your client at this point? Two things. First, I would beg to differ on the substance, because the mechanism says if the activities are directed against the U.S. or any other democratic country, that's the most important thing. The mechanism says if this activity is directed at another democratic country, then you are not — you don't come within the purview of this mechanism. That's what Judge Nielsen pointed out. She pointed out, in Kahn's case, that India is a democratic country, so this mechanism is not applicable. So you think that it's just semantics, that it's theoretically available, but no real relief would be given? No, not even theoretically. The statute is explicit. The mechanism is explicit. If this thing happened in a democratic — against a democratic country, you don't — you cannot invoke this mechanism. So even — leave the procedure, Your Honor. So, first of all, the BIA did not cite this in support of their decision, so — No, we were — I'm aware of that. We know what they did and didn't say. Okay. Okay. Thank you very much. Thank you, Judge. Thank you, counsel. It was a very challenging case, and we will submit it and ponder it. The case is argued. This is the last case on our calendar for the week, so we will stand in adjournment. All rise.
judges: Mills, Fisher, Rawlinson